**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| **LARRY L. ELLISOR, on behalf of himself and all similarly situated persons,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. 2:17-cv-144** |
| **PTS OF AMERICA, LLC,** | ) ) | |
| **Defendant.** | ) ) ) | |

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

---

Defendant PTS of America, LLC, submits this memorandum in support of its contemporaneously filed Motion for Partial Judgment on the Pleadings (the "Motion"). In the Motion, PTS moves the Court to dismiss three claims under Federal Rule of Civil Procedure 12(c): (1) Plaintiff Larry L. Ellisor's claim based on an alleged violation of his Fourth Amendment rights, because the Fourth Amendment has no application where, as here, a pre-trial detainee complains of conditions of confinement; (2) Ellisor's claim based on an alleged violation of his Eighth Amendment rights, because the Eighth Amendment has no application where, as here, the plaintiff complaining of conditions of confinement has not yet been convicted of a crime; and (3) Ellisor's claim for injunctive relief, because a plaintiff does not have standing to seek such relief where, as here, the plaintiff cannot demonstrate that he is likely to suffer *future* injury. The Motion should be GRANTED for these reasons, which PTS explains in further detail below.

**SUMMARY OF ARGUMENT**

In his lawsuit brought under 42 U.S.C. § 1983, Ellisor alleges that he was a pre-trial detainee when he was extradited from San Antonio, Texas, to Andalusia, Alabama, in February 2017, on a charge "for reckless endangerment." Amendment to Complaint ("Complaint"), Doc. 25, ¶ 16. Ellisor further alleges that PTS, which is "in the business of transporting inmates throughout the United States," transported him via van and bus from Texas to his destination in Alabama. *Id.* ¶¶ 16–29. Ellisor contends that the conditions of transportation amounted to violations of his Fourth Amendment rights, Eighth Amendment rights, and Fourteenth Amendment rights. *Id.* ¶ 48. Ellisor seeks both damages and injunctive relief. *Id.* at 10.

The pleadings demonstrate, however, that, as a matter of law, Ellisor may not pursue any claim based on the Fourth Amendment or the Eighth Amendment and may not pursue any claim for injunctive relief. Granting the Motion and dismissing these claims would narrow the issues for purposes of discovery and, ultimately, would provide a properly defined dispute for the parties to present to the Court for class certification and merits questions. *See Graham v. Connor*, 490 U.S. 386, 394 (1989) ("[T]he first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which the defendant is charged.").

The Fourth Amendment protects "against unreasonable searches and seizures," U.S. Const. amend. IV, and Ellisor does not challenge the reasonableness of any search or seizure or allege any facts related to his arrest. Instead, Ellisor alleges that he was "a pretrial detainee" and that PTS violated his right "to be free from unlawful conditions of confinement and cruel and unusual punishment." Complaint, Doc. 25, ¶¶ 16, 48. The Fourth Amendment therefore has no application to Ellisor's allegations. Indeed, the Eleventh Circuit has explained that "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996);

2

*see also Cotney v. Bowers*, No. 2:03-cv-1181, 2006 U.S. Dist. LEXIS 69523, at *13 (M.D. Ala. Sep. 26, 2006) (Watkins, J.) (relying on *Cottrell* and granting summary judgment to defendant on plaintiff's Fourth Amendment claim "arising from his mistreatment as a pretrial detainee"). As a matter of law, Ellisor has no claim based on the Fourth Amendment.

The Eighth Amendment prevents "cruel and unusual punishments" following a formal adjudication of guilt. U.S. Const. amend. VIII; *see also Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985) ("The eighth amendment . . . applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime."). As noted above, Ellisor was a pre-trial detainee and was not subject to a sentence of punishment. His claim is governed by the Fourteenth Amendment. Accordingly, as a matter of law, Ellisor has no claim for any alleged violations of the Eighth Amendment.

"Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994); *see also Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (holding that plaintiff must show that "he [i]s likely to suffer future injury" as result of challenged conduct (quotation marks omitted)). The Eleventh Circuit has explained that, "[l]ogically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." *Church*, 30 F.3d at 1337 (quotation marks omitted). Although Ellisor has alleged no facts to show that he faces a "threat of *future* injury," rather than an injury that remains exclusively and "entirely in the past," Ellisor seeks "declaratory and injunctive relief declaring illegal and enjoining, preliminarily and permanently," PTS's "policies, customs, or practices of transporting detainees and prisoners under the conditions described herein." Complaint, Doc. 25, at 10, ¶ 1. The purpose

3

of an injunction is to prevent a specific harm to a plaintiff who is likely in the future to suffer that specific harm. Ellisor is not likely in the *future* to experience the allegedly unconstitutional conditions of transportation that he alleges in his Complaint. Thus, as a matter of law, Ellisor has no standing to seek this relief.

## **ARGUMENT**

**I.      As a Matter of Law, Ellisor Cannot Sustain a Claim Under the Fourth Amendment**

Ellisor inserts a series of conclusory allegations in his Complaint that his Fourth Amendment rights were violated when PTS transported him from Texas to Alabama in February 2017:

> Plaintiff LARRY L. ELLISOR alleges that Defendant PTS OF AMERICA, LLC's polices, customs, or practices subjected him, and those similarly situated, to cruel and unusual punishment in violation of his constitutional rights, and the rights of persons similarly situated, secured by the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution . . . .

Complaint, Doc. 25, ¶ 9; *see also id.* ¶ 48 (same). But the Fourth Amendment does not protect against "cruel and unusual punishment." The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV; *see also Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) ("Plainly, an arrest without probable cause violates the right to be free from an unreasonable search under the Fourth Amendment." (quotation marks omitted)); *Saunders v. Duke*, 766 F.3d 1262, 1266–67 (11th Cir. 2014) ("The Fourth Amendment's guarantee against unreasonable searches and seizures includes the right to be free from the use of excessive force in the course of an arrest.").

Ellisor challenges neither a search nor a seizure. Nowhere in the Complaint does Ellisor contend that he was subject to an unreasonable search or that he was subject to the use of excessive force in the course of an arrest. Instead, Ellisor challenges only the *conditions* of transportation. *See, e.g.*, Complaint, ¶ 18 ("At all times during transport, Plaintiff LARRY L. ELLISOR was handcuffed to a waist chain, shackled, required to sit up on a hard plastic seat, and unable to lie down to sleep."), ¶ 19 ("Plaintiff LARRY L. ELLISOR received only one bottle of water per meal and one bottle of water at midnight."), ¶ 20 ("Plaintiff LARRY L. ELLISOR received only fast food, three times a day, limited to breakfast, a sausage and egg sandwich, and lunch and dinner, a hamburger or cheeseburger and fries."), ¶ 24 ("It was hot during the day and very cold at night because the air conditioner was on. No radio, TV, blankets, or pillows were provided."). Thus, to follow the Supreme Court's directive that "the first inquiry in any § 1983 suit is to isolate the precise constitutional violation with which the defendant is charged," *Graham v. Connor*, 490 U.S. 386, 394 (1989), is to recognize that Ellisor's claims are Fourteenth Amendment claims, not Fourth Amendment claims (or, as discussed below, Eighth Amendment claims). Moreover, eliminating an improper Fourth Amendment claim serves important judicial administrative interests. *See, e.g.*, *Moseley v. Sessions*, No. 2:16-cv-153, 2017 U.S. Dist. LEXIS 66080, at *4 (S.D. Ga. May 1, 2017) ("Even a partial grant of the Motion to Dismiss could narrow the issues which the parties must address in discovery and perhaps reduce the scope of discovery."); *Advanced Ambulatory Surgical Ctr., Inc. v. Cigna Healthcare of Ill.*, No. 13 C 7227, 2014 U.S. Dist. LEXIS 138722, at *15 (N.D. Ill. Sep. 30, 2014) ("Motions to dismiss are helpful when they narrow the issues in a case or prevent the advancement of a plainly spurious suit.").

The Eleventh Circuit has explained that "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process

Clause." *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996). In *Cottrell*, the court considered a § 1983 claim involving the death of an arrestee in the back of a police car from "positional asphyxiation." *Id.* at 1488 (quotation marks omitted). Two defendant police officers had responded to a 911 call and, "[a]fter a struggle of twenty minutes," subdued the decedent and placed him in "handcuffs and leg restraints." *Id.* Next, the officers "placed the decedent in a police car with his feet on the rear seat and his head in the space between the front and rear seats. In this position, the decedent was unable to adequately inhale oxygen and because of the handcuffs and leg restraints could not reposition himself," resulting in death. *Id.* The plaintiff brought a "custodial mistreatment claim," alleging that "conditions of custody and confinement creat[ed] an unreasonable danger to his safety and life," and an "excessive force" claim, alleging that the defendant officers "used excessive force to arrest him." *Id.* at 1485, 1489, 1492.

In accordance with the basic principle stated above (i.e., that "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause"), the court in *Cottrell* analyzed the "custodial mistreatment claim" under the Fourteenth Amendment. *Id.* at 1490. The court thus applied the "deliberate indifference" standard announced and defined in *Farmer v. Brennan*, 511 U.S. 825 (1994). Separately, the court applied the Fourth Amendment to the excessive force claim. *Cottrell*, 85 F.3d at 1492. The Fourth Amendment standard, in contrast to the Fourteenth Amendment's deliberate indifference standard, is "'whether the officers' actions [we]re objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* (quoting *Graham*, 490 U.S. at 397). The Fourth Amendment standard has no application here.

District courts in Alabama have adhered to these principles set out by the Eleventh Circuit. *See Cotney v. Bowers*, No. 2:03-cv-1181, 2006 U.S. Dist. LEXIS 69523, at *13 (M.D. Ala. Sep. 26, 2006) (Watkins, J.) (relying on *Cottrell* and granting summary judgment to defendant on plaintiff's Fourth Amendment claim "arising from his mistreatment as a pretrial detainee"); *Bey v. Abrams*, No. 7:14-cv-02205-RDP, 2015 U.S. Dist. LEXIS 80405, at *45 n.16 (N.D. Ala. June 22, 2015) ("Although the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees in state custody are protected by the Due Process Clause of the Fourteenth Amendment.").[1]

Under the foregoing law, a pre-trial detainee, like Ellisor, who has been arrested and is in custody does not retain Fourth Amendment rights with respect to the conditions of his confinement. The Court should dismiss Ellisor's Fourth Amendment claim.

## II.    As a Matter of Law, Ellisor Cannot Sustain a Claim Under the Eighth Amendment

It is well-established as a matter of constitutional law that the Eighth Amendment "applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime." *Hamm v. DeKalb County*, 774 F.2d 1567, 1572 (11th Cir. 1985); *see also H.C. v. Jarrard*, 786 F.2d 1080, 1085 (11th Cir. 1986) ("[T]he conditions of detainee incarceration affect

---

[1] Other circuits also are in accord. *See, e.g.*, *Riley v. Dorton*, 115 F.3d 1159, 1161 (4th Cir. 1997) ("The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person.  The events about which [the plaintiff] complains, however, took place at least two hours and ninety miles from the time and place of [the plaintiff's] arrest. Furthermore, as [the plaintiff] concedes, [the defendant] arrested him pursuant to a valid warrant. As one lawfully arrested and being held prior to a formal adjudication of guilt, [the plaintiff] is adjudged in our circuit to be a pretrial detainee."); *Brothers v. Klevenhagen*, 28 F.3d 452, 455–56 (5th Cir. 1993) (reasoning that Fourteenth Amendment rather than Fourth Amendment applied to § 1983 claim because "at the time" of incident, defendant "was in custody"); *Wilkins v. May*, 872 F.2d 190, 193 (7th Cir. 1989) (rejecting "the use of the Fourth Amendment to determine the limits of permissible post-arrest pre-charge conduct."); *see also Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 273–74 (D.D.C. 2011) (granting summary judgment to defendant on Fourth Amendment aspect of "overdetention" claim—i.e., a claim "that once a prisoner was entitled to release . . . the authority having custody over that person held them too long"—because "plaintiffs were already in custody at the time they were ordered released or their sentences expired").

liberty interests protected by the fourteenth amendment rather than the eighth . . . ."); *Hall v. Plumber Official*, 446 F. App'x 184, 187 n.3 (11th Cir. 2011) ("Claims concerning *post-conviction* prison conditions are covered by the Eighth Amendment; the Fourteenth Amendment only governs conditions of confinement *prior* to conviction."); *Foster v. Meeks*, No. 2:15-cv-786-MHT-TFM, 2017 U.S. Dist. LEXIS 16355, at *155 n.7 (M.D. Ala. Feb. 3, 2017) ("The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether the alleged denial of medical treatment and conditions of confinement imposed upon a pretrial detainee are violative of the Constitution.").[2]

The Complaint itself reflects that Ellisor was detained and transported not as a convicted prisoner but instead as a pre-trial detainee. His claim, if any, can be based only on the Fourteenth Amendment, not the Eighth Amendment. Thus, to the extent that Ellisor brings a claim based on the Eighth Amendment, the Court should dismiss that claim.

---

[2] PTS recognizes that the Eleventh Circuit has held that "the applicable standard is the same [as between the Eighth Amendment and the Fourteenth Amendment], so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees." *Cottrell*, 85 F.3d at 1490. That does not affect the vehicle by which the plaintiff must bring his claim, however. Ellisor undisputedly has a Fourteenth Amendment claim, not an Eighth Amendment claim.

Furthermore, the Eleventh Circuit's jurisprudence on this issue may be in doubt, and the standards for Fourteenth Amendment and Eighth Amendment claims in fact may be divergent. The Supreme Court has held that, under the Fourteenth Amendment, a pre-trial detainee bringing an *excessive force* claim "must show only that the force purposely or knowingly used against him was objectively unreasonable. A court must make this determination from the perspective of a reasonable [official] on the scene, including what that [official] knew at the time, not with the 20/20 vision of hindsight." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). This is a departure from the Eighth Amendment standard for an *excessive force* claim, which includes a subjective requirement. *See id.* at 2472. The Second Circuit and the Ninth Circuit have adopted *Kingsley*'s approach for *conditions of confinement* claims like Ellisor's. *See, e.g.*, *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017) (relying on *Kingsley* for the proposition that "the 'subjective prong' (or 'mens rea prong') of a deliberate indifference claim is defined objectively"); *Castro v. County of Los Angeles*¸ 833 F.3d 1060, 1070 (9th Cir. 2016) (same). The Eleventh Circuit has not confronted this precise issue in a published opinion. There is thus a significant likelihood that the Eleventh Circuit, like the Second Circuit and the Ninth Circuit, will extend *Kingsley* to *conditions of confinement* claims and create a clear delineation between the standards for an Eighth Amendment claim and a Fourteenth Amendment claim. In any event, because Ellisor does not have an Eighth Amendment claim, the Court should excise that aspect of the case now.

**III.    As a Matter of Law, Plaintiff Does Not Have Standing to Pursue Injunctive Relief**

The burden is on the plaintiff who purports to represent a class to demonstrate that he has a cognizable injury sufficient to satisfy Article III to pursue injunctive relief. *See Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("[N]amed plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."). Ellisor cannot make this showing, as he is not currently suffering, and will not likely suffer, any constitutional deprivations.

Where a plaintiff seeks injunctive relief through § 1983, the plaintiff must show that "he [i]s likely to suffer future injury" as a result of the challenged conduct. *Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (quotation marks omitted); *see also Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994) ("[A] party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury."); *Thomas v. Bryant*, 614 F.3d 1288, 1318 (11th Cir. 2010) ("[T]he irreparable-injury requirement cannot be met absent a real or immediate threat that the plaintiff *will be wronged again*." (emphasis added)). Because an injunction by definition enjoins *present* and *future* conduct, not *past* conduct, the inquiry must be focused on the present and future.

*Lyons* controls this issue. In *Lyons*, the Supreme Court considered whether a § 1983 plaintiff had standing to pursue his claim for injunctive relief. 461 U.S. at 97–98. The plaintiff alleged that he had been the subject of police officers' use of excessive force (i.e., a certain type of chokehold) and sought damages for his injuries as well as injunctive relief against the use of the chokehold. The plaintiff contended that the use of the chokehold violated the Fourth Amendment and the Fourteenth Amendment. The district court granted a preliminary injunction, enjoining the city's police officers from using the particular chokehold at issue. *Id.* at 99–100. The Ninth Circuit affirmed, but the Supreme Court reversed, holding, as a matter of law, that the plaintiff could not

pursue his injunctive relief claim against the city.

The Supreme Court explained that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Id.* at 102 (quotation marks and alterations omitted). The threat of injury must be "real and immediate." *Id.* at 105. Thus, the Supreme Court concluded that the plaintiff had not satisfied the standing requirement for his claim for injunctive relief because he had not established an immediate threat of injury:

> That [the plaintiff] may have been illegally choked by the police . . . , while presumably affording [the plaintiff] standing to claim damages against the individual officers and perhaps against the City, does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part. The additional allegation in the complaint that the police in Los Angeles routinely apply chokeholds in situations where they are not threatened by the use of deadly force falls far short of the allegations that would be necessary to establish a case or controversy . . . .

*Id.* at 105.

Furthermore, particularly relevant here, as the Eleventh Circuit has explained, the injury alleged in *Lyons* "was predicated on the plaintiff first doing something that would at least give an officer probable cause to detain or arrest him," and the Supreme Court is hesitant "to assume that [a] plaintiff will routinely violate the law in the future" so as to create standing to pursue injunctive relief. *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1162 (11th Cir. 2008); *see also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) ("Apparently, the proposition is that *if* [the plaintiffs] proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before [the defendants], they will be subjected to the discriminatory practices that [the defendant judges] are alleged to have followed. But it seems to us that attempting to anticipate whether and when these [plaintiffs] will be charged with crime and will be made to appear before

either [defendant] takes us into the area of speculation and conjecture. . . . We assume that [plaintiffs] will conduct their activities within the law and so avoid prosecution and conviction." (emphasis added)).

A recent Eighth Amendment decision from the Eleventh Circuit demonstrates that neither past injuries nor conjecture and speculation about future injuries is sufficient to confer standing to pursue injunctive relief. *See Smith v. Sec'y, Dep't of Corr.*, 602 Fed. Appx. 466 (11th Cir. 2015). The inmate sought an injunction against the Florida Department of Corrections' policy regarding tooth extractions because he had previously had a tooth restored and feared that "he might be forced to have that tooth pulled, rather than repaired, should any future problems arise." *Id.* at 467. The Eleventh Circuit affirmed the district court's decision dismissing this claim for lack of standing, citing *Lyons* and holding that his "claim [was] too conjectural to confer standing" because the alleged future injury would only occur *if* the plaintiff's restoration failed, *if* the dentist extracted the tooth rather than repaired it, and *if* the extraction would be unnecessary under the circumstances. *Id.* at 470; *see also Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1272 (11th Cir. 2015) (plaintiff did not have standing to pursue injunctive relief in antitrust case because "former exposure" to defendant's allegedly violative conduct could not be "basis of a request for injunctive relief"); *Mick v. Raines*, No. 14-6037-CV-SJ-BP, 2017 U.S. Dist. LEXIS 25284, at *4 n.5 (W.D. Mo. Feb. 23, 2017) ("Plaintiff has not contended or demonstrated that he is likely to personally come in contact with officers from the [jail] in the future, so he has no standing to pursue injunctive relief."); *Shaw v. Hood*, No. 7:14-cv-389-RDP-JEO, 2017 U.S. Dist. LEXIS 8821, at *5 (N.D. Ala. Jan. 4, 2017) ("As a general rule, a transfer or a release of a prisoner from prison moots the prisoner's claims for injunctive or declaratory relief.").

Further illuminating the fundamental principle in *Lyons*—i.e., in order to have standing to

seek injunctive relief, a plaintiff must demonstrate a real and immediate threat that he would be subjected to the allegedly unlawful conduct in the future—is a subsequent Supreme Court case in which the Supreme Court concluded that a plaintiff *did have standing* to pursue injunctive relief. *See Honig v. Doe*, 484 U.S. 305 (1988). There, public school officials had removed an emotionally disturbed adolescent from the classroom for misbehavior, allegedly in violation of the Education of the Handicapped Act, 20 U.S.C. § 1400 *et seq*. The Supreme Court concluded that it was reasonable to assume that the adolescent would return to the classroom and that, given the adolescent's "prior history of behavior problems," it was "certainly reasonable" to believe that he would "again engage" in misbehavior in the classroom. *Id.* at 320. The Supreme Court also concluded that it was "equally probable" that the public school officials would again attempt to remove the adolescent from the classroom in violation of the EHA. *Id.* at 321. Accordingly, the Supreme Court held that the adolescent could seek to enjoin the public school officials from removing students from the classroom without complying with the EHA because, otherwise, the adolescent "would be faced with a real and substantial threat of such action in any California school district in which he enrolled." *Id.* at 322.

A key distinction between this case and the facts of *Honig* is the fact that the future injury in this case is predicated upon the Plaintiff's decision to commit wrongful acts in the future. The Supreme Court restated in *Honig* that "for the purposes of assessing the likelihood that state authorities will reinflict a given injury, we generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." 484 U.S. at 320 (citing *Lyons*, 461 U.S. 95, 105-106). Recognizing this, the Eleventh Circuit explained that the situation in *Honig* was different because the plaintiff in that case was

"unable to govern his aggressive, impulsive behavior." *Id.* at 320.  His future misconduct was rooted in his mental illness, which could not be controlled. *Id.*

In this case, Plaintiff's likelihood of alleged future harm is "predicated on the plaintiff first doing something that at least would give an officer probable cause to detain or arrest him," entirely unlike the circumstances of *Honig*. *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153 at 1162 (11th Cir. 2008).  The Supreme Court and the Eleventh Circuit have disapproved using a Plaintiff's own illegitimate conduct as a basis to show the likelihood of a potential future injury. *Browning*, 522 F.3d at 1162.  Plaintiff is no longer in custody and his likelihood of being subjected to potential future harm is entirely predicated on Plaintiff's re-arrest and transport, which cannot occur without Plaintiff taking some illegal or illegitimate action.

As such, the circumstances here are distinct from those in *Honig* and materially indistinguishable from those in *Lyons*, *O'Shea*, and *Smith*. The plaintiff has alleged only *past harm*—i.e., that the conditions of his transportation *deprived* him of his constitutional rights—and has failed to demonstrate that there is a "real and immediate" threat that that harm will recur as a result of the conduct of the defendants. The plaintiff has not alleged and cannot show that he will be subject to those conditions in the near future—or ever. The plaintiff has not alleged and cannot show that he will be transported by PTS again. The plaintiff's dispute with PTS is a dispute regarding the conditions of his transportation in February 2017. Injunctive relief therefore is inappropriate. *See Church*, 30 F.3d at 1337 ("Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past."). Moreover, the prospect of future injury for Ellisor would rest exclusively on the likelihood that he will again be arrested for and charged with a crime and will again be subjected to the same conditions that he alleges to have suffered in February 2017. This is insufficient; the Court must not presume that Ellisor will

"routinely violate the law." *See Browning*, 522 F.3d 1153, 1162.

In sum, the plaintiff cannot show that any of the relevant past events alleged in the Amended Complaint is likely to recur. Under *Lyons*, such a showing is required, and Ellisor's claim for injunctive relief must be dismissed.

## **CONCLUSION**

The Court should GRANT the Motion and dismiss Plaintiff's claims insofar as they rely on the Fourth Amendment or the Eighth Amendment and dismiss any and all claims seeking injunctive relief.

Respectfully submitted on March 6, 2018.

**AUSTILL LEWIS PIPKIN & MADDOX**

By:  /s/ E. Martin Bloom
        E. Martin Bloom
        BPR No. ASB-2430-O59E
        600 Century Park S., Suite 100
        Birmingham, AL  35226
        mbloom@maplaw.com
        (205) 314-1031

**LEWIS, THOMASON,
KING, KRIEG & WALDROP, P.C.**

By:   /s/ R. Dale Bay
        R. Dale Bay, TN BPR No. 10896
        *(pro hac vice)*
        Daniel Olivas, TN BPR No. 24641
        *(pro hac vice)*
        424 Church Street, Suite 2500
        P.O. Box 198615
        Nashville, TN 37219-8615
        dbay@lewisthomason.com
        dolivas@lewisthomason.com
        (615) 259-1366

        *Attorneys for PTS of America, LLC*

14

## <u>CERTIFICATE OF SERVICE</u>

   I certify that, on March 6, 2018 I filed the foregoing document in Case No. 2:17-cv-144 in the United States District Court for the Middle District of Alabama via the CM/ECF system. All counsel of record in the case are registered CM/ECF users and will be served by the CM/ECF system. The contact information for all counsel of record in the case is listed below.

Derek Evan Yarbrough
MOTLEY, MOTLEY & YARBROUGH, LLC
117 East Main Street
Dothan, Alabama 36301
motley@graceba.net | 334.793.0051

Dustin Judd Fowler
Stephen T. Etheredge
BUNTIN, ETHEREDGE & DOWLING, LLC
185 North Oates Street
Dothan, Alabama 36301
dustinjfowler@hotmail.com | 334.793.3377
setheredge@graceba.net | 334.793.3377

Mark E. Merin
LAW OFFICE OF MARK E. MERIN
1010 F Street, Suite 300
Sacramento, California 95814
mark@markmerin.com | 916.447.8336

         __/s/ E. Martin Bloom _____